SARAH JACOBS v. MILDRED AND J. H. McCLINTOCK ET AL.

*(Case No. 671.)*

1. TRUST SALE — SUBSTITUTE TRUSTEE — EXECUTION OF POWER. — A deed of trust otherwise regular, provided that in the event the trustee named should be unwilling or unable to act in carrying out the trust, then for the appointment by him of a substitute trustee; and in the event the trustee should refuse to appoint a substitute trustee, then it should be lawful for the holder of the note, due and unpaid, to appoint a substitute trustee under his hand and seal, and that his acts should be effectual and binding. Prior to any action being taken under the deed of trust, the original trustee died without appointing a substitute, and afterwards the holder of the note appointed in writing, not under seal, a substitute trustee, by whom the land, after default, was advertised, sold and conveyed. In a controversy involving the validity of the sale, *held* —

   1. That the stipulation in regard to the appointment of a substitute trustee should be governed by the rules applicable to the exercise of directory powers.

   2. The original trustee being rendered unable to act by death, though there was technically no refusal to appoint a substitute, there existed what was in effect equivalent to a refusal.

   3. Looking to the deed for the intention of the parties, the contingency had occurred which authorized the holder of the note to appoint a substitute trustee.

   4. The defective execution of a valid power will be sustained in favor of creditors and purchasers for value, and others not mere volunteers, when the intention of the parties clearly appears, and has been substantially carried out, when the defect complained of is a technical one, was not occasioned by fraud, and did not result in legal injury to the parties interested.

   5. The execution of the power being in other respects valid, the omission of a seal in the appointment of the substitute trustee did not invalidate it.

APPEAL from Harris. Tried below before the Hon. James Masterson.

Suit in trespass to try title, brought by Sarah Jacobs, appellant, against J. H. McClintock and Mildred McClintock, to recover lot six and half of lot seven, in block one hundred and twenty-six, on the south side of Buffalo Bayou, in the city of Houston. The original petition was filed July 28, 1875. October 19, 1875, defendants answered by general demurrer,

plea of not guilty; that they were innocent purchasers of the property; plead limitation, and suggested valuable improvements made in good faith. They also alleged that they claimed the property under warranty deed from Henry Brashear and wife, and that Brashear claimed under warranty deed from Robert Brewster; they brought in Henry Brashear and wife and Robert Brewster as warrantors, and asked for judgment against them on their warranties, in the event the plaintiff recovered.

November 16, 1875, plaintiff filed an amended petition, alleging that on January 4, 1862, the property was conveyed to her by Robert Brewster and C. J. Grainger; that she was then a *feme covert,* and the conveyance was made to her for her exclusive property; that on August 24, 1866, a deed of trust on the property in controversy and the balance of lot seven was executed by plaintiff and her husband to C. J. Grainger, to secure Robert Brewster in a note of Abram Jacobs (plaintiff's husband), for $1,000 gold, due ninety days from its date; that the note was an usurious contract, and void; that plaintiff paid $250 gold on the note up to January 14, 1867, and in April, 1867, or thereabouts, she and her husband, intending to be temporarily absent from Houston, delivered the premises to Brewster, who received the rents of the same up to August 23, 1869, when Brewster caused the premises to be sold by John Brashear, as pretended substitute trustee, and at the trustee's sale Brewster became the purchaser, and from that time held the premises and collected the rents, until he sold to Henry Brashear, on March 26, 1870; that during the time Brewster held the premises, the rents were received and appropriated on the note. Plaintiff further alleged that the trustee's sale was void; that John Brashear was never constituted as substitute trustee, and had no power to act as such, and that Brewster never had any interest in the property except by way of mortgage thereon; and that all Brewster's acts about the property were fraudulent and void.

Henry Brashear and wife, in their original answer, alleged

that they had conveyed good title to the property in contro-
versy to Mildred McClintock.

Brewster answered, alleging that he had conveyed to Brashear
good title to the property.

In amended answers filed, the defendants, J. H. and Mildred
McClintock, and the warrantors, Brashear and wife, denied all
the allegations in plaintiff's pleadings, and set up that they
were innocent purchasers of the property in controversy, and
possessors in good faith for more than one year before the
institution of the suit, and suggested valuable improvements
made in good faith. They also alleged the execution of the
deed of trust by Abram and Sarah Jacobs, to C. J. Grainger,
to secure Robert Brewster, regular and valid sale thereunder
to Brewster, defendant's claim under Brewster, and that
plaintiff and her husband assented to the trustee's sale, and
ratified it, and were thereby estopped from asserting its
invalidity.

The defendants and Henry and Maggie Brashear pleaded
the three and five years' statute of limitation, and alleged pur-
chase of the property by them, and payment of the purchase
money in good faith, without notice of plaintiff's claim. Ver-
dict for the defendants, and judgment.

The deed of trust from Jacobs and wife to Grainger, to
secure Brewster, provided that in case of default on the part of
the makers of the trust deed, or on the part of their assigns,
in the payment of the note and interest secured by the deed,
when the same should be due and payable, then the trustee,
Grainger, was thereby empowered, and it should be his duty,
as trustee, at any time after default made in the payment of
the note, at the request of the legal holder, to advertise the
property conveyed, for twenty days, for sale, to be sold on a
day named in the advertisement, before the court house door
in Harris county, to the highest and best bidder for cash, etc.,
and apply the proceeds of the sale, after deducting expenses of
the sale, to the payment of the note and interest. In the
event said Grainger should be unwilling or unable to act

in carrying out the trust, then the deed provided for the appointment by him of a substitute trustee. In the event Grainger should refuse to appoint a substitute trustee, then it should be lawful for the holder of the note due and unpaid to appoint a substitute trustee, under his hand and seal, and that his acts should be as effectual and binding as though performed by the original trustee.

The appointment of the substitute trustee was objected to by plaintiff on the ground that there had been no refusal of Grainger to appoint a substitute, and therefore Brewster had no authority to appoint, and that the writing offered as the appointment of John Brashear was not under Brewster's seal.

Mrs. Grainger's testimony was that her husband C. J. Grainger died July 1, 1869.

The appointment of John Brashear as substitute trustee was in due form and under the hand and signature of Robert Brewster, but was not under his seal, and was executed on July 22, 1869.

Brewster's testimony showed that he held and owned the note secured by the deed of trust, and that it was due and unpaid at the time he appointed John Brashear substitute trustee.

It was admitted that the chain of title from the sovereignty of the soil down to plaintiff was regular.

*W. P. & E. P. Hamblen* for appellant. — The first point we raise is, that the court erred in admitting in evidence the appointment of John Brashear as substitute trustee.

The deed of trust from Jacobs to Grainger, use of Brewster, provides if Grainger "refused to appoint a substitute trustee, then it shall be lawful for the holder of the note due and unpaid to appoint said substitute trustee under his hand and seal."

We objected to the admission of said appointment:

First. Because there was no provision in said deed of trust to appoint a substitute trustee except in case of Grainger's refusal. This is a voluntary trust. The conditions must be

strictly complied with. Equity would have executed this trust, had its assistance been invoked, but will not lend its assistance, in this class of cases, in curing the defective execution of the power by a volunteer or interloper. Story's Equity, vol. 1, sec. 95. In this case Brashear was a volunteer. Brewster was not a purchaser for value; he credited his bid on the note. Equity will not assist either, farther than to foreclose that lien.

Secondly. Because the appointment of John Brashear as substitute trustee is not under seal, as required by the terms of the deed in trust. "If the power is to be executed under seal, and the seal is omitted, it is not a good execution of the power." Dormer *et al. v.* Thurland *et al.*, 2 Peere Williams, p. 509 "If there is any irregularity, * * * or as to the manner in which it is made, the purchaser of the trust property may find his title utterly worthless." Perry on Trusts, sec. 288. And to the same effect see Hawkins & Kemp, 3 East, 410; Sugden on Powers, vol. 2, pp. 300 and 304; Washburn on R. P., vol. 2, p. 609, and cases cited.

In our view of the case, the only relief equity would have afforded the appellees, if any, would be to subrogate them to Brewster's lien, and foreclose the same on the land, and not to have decreed them the land.

For which errors, with others set forth in our assignment, we ask that the cause be reversed and remanded.

*Baker & Botts, Crank & Webb* and *J. W. Jones* for appellees. — The presumption is that Grainger, during his lifetime, was neither unable nor unwilling to act, otherwise he would have appointed a substitute. Nor is it likely that Grainger, while living, refused to appoint a substitute, otherwise Brewster, the holder of the note, would have done so. Suppose Grainger had lived, and on request had refused to appoint a substitute, can it be denied that, in such case, Brewster would have had that power? Then how much stronger is the case when Grainger is dead and cannot refuse? Is not his

(Grainger's) death stronger than his refusal could have possibly been?

If a condition becomes impossible by the act of God, the condition is discharged. (2 Bacon's Abridg., title "Conditions," subd. 2, heading of the Act of God, and the various decisions under that heading; see, also, Bouvier's Law Dic., title "Impossibility.")

Had Grainger lived, he could only have refused on demand by Brewster to act, which refusal would authorize Brewster to appoint a substitute trustee. Now, if Grainger's refusal would have been authority to Brewster, *a fortiori,* would not Grainger's death be much stronger authority to Brewster to appoint a substitute trustee? Hence, it is plain, from the trust deed, that Brewster had the right to appoint the substitute.

Now, should the appointment have been made under Brewster's seal?

The act of February 2, 1858, 1 Paschal's Dig., art. 5087, is as follows: " No scroll or private seal shall be necessary to the validity of any contract, bond, or conveyance, whether respecting real or personal property, except such as are made by corporations; nor shall the addition or omission of a scroll or seal affect the force and effect of the same."

The use of seals in England had its origin in ignorance. But few persons were sufficiently educated to write, at the time of their introduction. The lords and noblemen had their distinct seals, with particular devices, which they used sometimes with, and sometimes without, their signatures; the seal being regarded as the best evidence of the execution of instruments. The seal answered for the signing of the name, or the signature of the party.

The same method of executing instruments was adopted by the commons, who rejected the signature altogether, and affixed waxen seals, as evidence of the execution of deeds, etc. Hence, the stringency of the common law upon the subject of seals, and its many subtile provisions and distinctions as to instruments under seal or not under seal. But as education became

more general, most, if not all, of these inconveniences and foolish distinctions were discarded, and in our own country state after state has, by statute, abolished them; and Texas, in 1858, by the law above quoted, did it most effectually.

· The case of Dormer *et al. v.* Thurland *et al.*, in 2 Peere Williams, 505, is relied upon by the appellant, but an examination of the case will show that Lord Chancellor King held the will to be a good one without the addition of a seal. But we submit that the case is not similar to the one we are discussing. That was a charge by a will on the estate. This is a power or authority given, by consent of parties, to a trust deed.

It would be useless to hold that a seal is essential without giving to it the full common law definition and signification; then it would have to be made of wax, or some other soft substance, with letters, figures, or other devices, to distinguish it as Brewster's seal. A scroll for seal would not answer. But Brewster has no seal. Why? Because the statute has abolished seals, and says they shall no longer be necessary; that their omission or addition will not affect the validity of an instrument, and that a stipulation for, or an addition of the seal, is the merest surplusage.

A contract to convey land need not be under seal. Miller *v.* Alexander, 8 Tex., 36; Durst *v.* Swift, 11 Tex., 280; Hollman *v.* Cresswell, 13 Tex., 45; Martin *v.* Weyman, 26 Tex., 466; Fisk *v.* Miller, 13 Tex., 45.

*Jones & Garnett*, also for appellees.

I. Grainger, the original trustee, having died before the appointment of John Brashear, Brewster, the holder of the note, had a right to make the appointment, and the writing signed by Brewster, appointing Brashear substitute trustee, was properly admitted in evidence, because it was a substantial execution of the power to substitute, and such an execution as a court of equity should aid and sustain. Art. 5087, Paschal's Dig.; Story's Eq. Juris., sections 94, 95, 96, 97, 172, 173, 174;

Bouv. Law Dic., title "Impossibility;" 2 Bacon's Abridgement, title "Condition," subdivision 2, under heading "Act of God," and decisions under that head.

II. The instrument substituting John Brashear was properly admitted in evidence, because the proof showed that the plaintiff knew that John Brashear, as substitute trustee, had advertised the property conveyed in the trust deed, and was about selling under the deed of trust, in accordance with the advertisement, and she made no objection to the advertisement or sale.

BONNER, ASSOCIATE JUSTICE.— Sarah Jacobs, plaintiff below, appellant here, seeks to avoid the trust sale and deed under which appellees claim, made by Brashear, substitute trustee for Grainger, for the reason that Brashear was not legally appointed: *first*, because the contingency had not happened which authorized Brewster to make the appointment; *second*, because the appointment was not made under seal.

The trust deed provided that in the event Grainger should be unwilling or unable to act in carrying out the trust, then for the appointment by him of a substitute trustee.

And in the event Grainger should refuse to appoint a substitute trustee, then it should be lawful for the holder of the note due and unpaid to appoint said substitute trustee, under his hand and seal, and that his acts should be as effectual and binding as though performed by the original trustee.

The testimony showed that prior to the sale under the trust deed, Grainger, the original trustee, died without having appointed a substitute, and that Brewster, by whom Brashear was appointed, was the holder of the note, and that the appointment was made under his hand simply, and not under his hand and seal.

There is no question as to the validity of the original trust deed, and the principle which underlies the above issues is analogous to that which governs in cases of the defective execution of a valid power.

As equity looks to the substance and not to the shadow, the defective execution of a valid power will be sustained in favor of creditors and purchasers for value, and others, not mere volunteers, when the intention of the parties clearly appears and has been substantially carried out, and when the defect complained of is a technical one, and which it may reasonably be presumed was not occasioned through fraud and did not result in legal injury to the parties interested. 1 Story's Eq. Jur., §§ 94–97; Id., §§ 170–174; 2 Washb. on R. P., 335, sec. 8.

In our opinion, the stipulation in the deed of trust in regard to the appointment of a substitute trustee comes within that class known as directory powers, in which some degree of latitude is allowed, rather than that class known as *strict* powers, to be executed only under the circumstances prescribed in the instrument. Perry on Trusts, § 490.

The death of Grainger rendered him wholly unable to act as trustee or to appoint a substitute trustee, and although there was not a technical refusal to make such appointment, yet there existed, in effect, what was equivalent to such refusal.

The evident intention of the parties was, that a sale of the property might be made through a trustee, without the formality, delay and expense of a judicial proceeding, and we are of opinion that, substantially, in the light of this intention, the contingency happened which authorized Brewster to appoint the substitute trustee.

The mere omission of a seal would not render invalid the execution of a power otherwise valid. 2 Sugden on Powers, marg. p. 125, sec. 27; 1 Story's Eq. Jur., § 97; Id., § 174.

The case of Dormer *v.* Thurland, 2 Peere Williams, 506, cited by appellant, to the effect that the omission of a seal in the execution of a power would render it invalid, was greatly weakened as authority by the subsequent opinion of Lord Mansfield in Earl of Darlington *v.* Pulteney, Cowper, 268, and cases there cited.

Whatever might once have been the necessity of a seal to give solemnity and authenticity to the execution of instru-

ments, this necessity, as to contracts between individuals, has passed away, and the reason having ceased, express legislation in this and other states has dispensed with seals as a useless formality.

Our statute in force at the date of this transaction, provided that " No scroll or private seal shall be necessary to the validity of any contract, bond, or conveyance, whether respecting real or personal property, except such as are made by corporations; nor shall the addition or omission of a scroll or seal affect the force and effect of the same.   *   *   *" Paschal's Dig., art. 5087.

As said by Mr. Perry, " Why any effect should be given to a form that has ceased to be a solemnity would be hard to explain on principle, and is equally uncertain upon the authorities." Perry on Trusts, § 111.

We are of opinion that the omission of a seal to the appointment of Brashear as substitute trustee was not such defect in matter of substance as should vitiate his sale.

It may be added, that the testimony shows that the property was community; that before the sale it had been abandoned as a homestead; that both the plaintiff, Mrs. Jacobs, and her husband, not only failed to take proceedings to prevent the sale, but acquiesced in it; that the sale was fairly made, and seemingly for a fair price, $1,000, the amount of the note; that it does not appear but that this note was given up and would now be barred by limitation; and it does appear that the property long since has passed into the hands of successive purchasers.

To set aside the sale under these circumstances for a mere technicality, would be in violation of plain principles of justice and equity.

This disposition of the case renders it unnecessary to pass upon the other points presented. Judgment affirmed.

AFFIRMED.