G. H. CHEVERAL v. C. P. McCORMICK.

(Case No. 1328.)

1. POWER OF SUBSTITUTION — EVIDENCE.— McCormick, being indebted to N. Murphy, executed a deed of trust on land to secure the debt, naming one Valentine Pool as trustee, but reciting in the deed that, "should said Pool neglect or refuse to act, then said Nicholas Murphy, or his administrator or assigns, shall have power, and such power is hereby conferred upon him or them, to appoint a substitute trustee in writing, under his or their hand and seal." Murphy wrote the following letter to Brashear, who assumed under it to act as substitute trustee, and as such sold the land and executed a deed:

"GALVESTON, Dec. 6, 1870.

"JOHN BRASHEAR, Esq., Houston:

"Dear Sir— Capt. Boyce informed me that you wanted to know what I wanted done with the McCormick place. In answer, I would say that I do not think that McCormick will ever be able to redeem it, so you will take the proper steps to close it out, and I hereby appoint you my attorney to settle the same. The papers are recorded here and in Houston. Any information you may want, write me. I would like to be present when sold. You will please inform me the day of sale, or send me the paper it is advertised in.

"Yours respectfully,          N. MURPHY."

In a suit between the vendee of McCormick claiming the land, and one claiming under the sale made by Brashear, held,

(1) The letter invested Brashear with no authority to make the sale.

(2) The omission of the seal would not alone have rendered invalid an appointment of a substitute trustee.

(3) The evidence of the cestui que trust Murphy, offered to show that by the letter he intended to appoint Brashear a substitute trustee, was properly excluded.

(4) The declarations of McCormick, made after conveying the land, ratifying the sale made by Brashear, were inadmissible.

APPEAL from Harris. Tried below before the Hon. James Masterson.

Appellant brought this suit in trespass to try title on the 20th of June, 1874, against C. P. McCormick, to recover possession of fifty acres of land in Harris county, being a portion of the league originally granted by the Mexican government to Arthur McCormick, claiming title to and possession of the same on the 1st day of January, 1874, when defendant's entry was alleged. He amended by alleging that plaintiff and defendant claimed the land from a common source, to wit, from Michael McCormick; that the defendant claimed by virtue of a deed from Michael McCormick to him, dated the 15th of January, 1868, and which plaintiff alleged was junior to the deed he claimed under. Plaintiff again amended August 7, 1875, and prayed that if his title should not be sustained, then that a deed of trust from McCormick to Pool, for the use of Murphy (he alleging that he was the owner and holder of such deed of trust and note, upon which it was based), be foreclosed.

Answer of general demurrer and "not guilty."

Defendant claimed the land as owner, alleging that the pretended claim of plaintiff was a cloud upon his title, asking that he be quieted in his title and plaintiff's claim canceled.

A paper signed by counsel admitted that John A. McCormick and C. P. McCormick were the only heirs of Michael McCormick, and the grandchildren of Arthur McCormick, the original grantee of the league, and that plaintiff and defendant claimed the land through Arthur McCormick.

Judgment for the defendant.

The first assignment of error was as follows: "1st. The court erred in excluding from evidence the letter written by N. Murphy to John Brashear, dated December 6, 1870, and set out in bill of exceptions No. 1, said letter being intended by said Murphy as an appointment as substitute trustee in the deed of trust made by Michael McCormick to Valentine Pool for use of said Murphy, because plaintiff offered to prove that said Murphy intended the same as an appointment as substitute trustee, and offered to prove that the ancestor of defendant had afterwards ratified the sale made by Brashear under said letter of appointment."

The following is the letter referred to:

"GALVESTON, Dec. 6, 1870.

"JOHN BRASHEAR, Esq., Houston:

"*Dear Sir* — Capt. Boyce informed me that you wanted to know what I wanted done with the McCormick place. In answer, I

would say that I do not think that McCormick will ever be able to redeem it, so you will take the proper steps to close it out, and I hereby appoint you my attorney to settle the same. The papers are recorded here and in Houston. Any information you may want, write me. I would like to be present when sold. You will please inform me the day of sale, or send me the paper it is advertised in.

"Yours respectfully,    N. MURPHY."

Counsel for plaintiff stated to the court when the letter was offered, that notwithstanding the paper may be defectively executed, that they would follow it up with evidence showing that Michael McCormick, the maker of the deed in trust, had, subsequently to the sale made by John Brashear, ratified and confirmed said sale.

The plaintiff introduced, as witnesses in his behalf, John Brashear and Nicholas Murphy, and asked each of said witnesses the following questions:

"Did you ever have any conversation with Michael McCormick after the sale of the land under the trust deed by Brashear; and if so, what did he say in regard to that sale?"

To which the defendant objected, stating that the testimony was inadmissible because Brashear had not been invested with proper authority to make sale of the land as substitute trustee; which objection was sustained by the court. Then the witness Nicholas Murphy was by plaintiff shown his letter to John Brashear, dated December 6, 1870, and asked what he intended by said letter, and what authority, if any, he intended to confer on Brashear by said letter. This evidence was objected to and excluded.

The statement of facts shows that the land was part of the league granted to Arthur McCormick, from whom it passed to Michael McCormick, and that appellee and John A. McCormick were Michael's heirs.

Plaintiff put in evidence a deed of trust, including the fifty acres, executed by Michael McCormick to Valentine Pool, for the use of Nicholas Murphy, to secure the payment of a note for $875 in favor of Murphy, dated April 22, 1866, due 1st of January, 1867. Deed of trust dated April 23, 1866, and was duly recorded in Harris county May 17, 1867. This deed of trust required that if it was foreclosed, advertisement thereof should be made in the "Galveston News," a paper published in Galveston, Texas, for twenty days, and did not specify where said land should be sold. It also contained this provision: "And should said Valentine Pool fail, refuse or neglect to act, then the said Nicholas Murphy, or his administrator.

or assigns, shall have the power, and such power is hereby conferred upon him or them, to appoint a substitute trustee in writing, under his or their hand and seal."

It was proved by John Brashear that he, assuming to act as substitute trustee, advertised the property in the "Galveston News," a paper published in Galveston, for sale, as required by the deed of trust, to be sold in Houston, at the court house door of Harris county, on Tuesday, February 7, 1871, and that at that time and place he sold to Nicholas Murphy for the sum of $400.

There was then put in evidence the note executed by Michael McCormick in favor of Nicholas Murphy for $875, dated April 22, 1866, due January 1, 1867, and credited by interest up to January 1, 1867, and $400 proceeds of trust sale. Plaintiff then put in evidence the deed to the land in controversy from Nicholas Murphy to G. H. Cheveral, the appellant, dated July 8, 1872, duly recorded.

Cheveral testified that he paid Nicholas Murphy $800 in gold for the land described in the deed to him, made by Murphy, July 8, 1872, which included the land in controversy; that before he purchased the land from Murphy, and after the sale by Brashear to Murphy, he saw Michael McCormick, the father of appellee, and the maker of the trust deed to Pool for use of Murphy, and informed him that he thought of purchasing the land from Murphy, and before doing so wanted to know from him whether Murphy's title was all straight; and that Michael replied that if there was a good title in Texas Murphy had one, as the land had been granted to his father and came from his father to him, and from him (Michael) to Murphy; and that after learning these facts from Michael, he purchased the land from Murphy; that after he purchased he helped Michael to survey adjoining lands on the McCormick league, and that, while making these surveys, Michael pointed out to him the corners and lines of the tract purchased by appellant from Murphy, and that Michael remarked, "they are your lines and your corners;" that he paid Murphy $400 in cash and gave his note for $400, which he afterwards paid to John Brashear for Murphy, and which Murphy acknowledged to have received.

Nicholas Murphy testified as follows: That he called on Valentine Pool, the trustee named in the deed of trust, and that he declined to act as trustee in foreclosing the deed of trust; that appellant paid him $800 for the tract he sold him, including the land in controversy, and that he wrote the letter to John Brashear dated December 6, 1870. Further testimony of this witness as to what he intended that letter to Brashear for was excluded.

The defendant below only introduced in evidence a deed from Michael McCormick, his father, to him, dated January 15, 1868, and recorded in Harris county January 16, 1868, which deed recited a consideration of $5; it embraced the land in controversy and contained full covenants of warranty.

*Chas. Stuart* and *D. U. Barziza*, for appellant.

I. An irregular or defective execution of a power will be relieved and aided in equity, or by subsequent ratification by the maker of the power. As to equity aiding defective execution of a power, see Minuse *v.* Cox, 5 Johns. Ch., 411, 442; 2 Sugden on Powers, 7th ed., 88, 175; Harding *v.* Glyn, and notes in Leading Cases in Equity, 2d ed., pp. 789, 811; Pollet *v.* Pollet, Leading Cases in Equity, 2d ed., 184, and p. 214, 2d Am. ed. As to ratification: Vincent *v.* Rather, 31 Tex., 91; Reese *v.* Medlock, 27 Tex., 124; Brock *v.* Jones, 16 Tex., 465.

II. The appellee is estopped by the declarations and acts of his father Michael from setting up claim to the land. The statement of facts under the first proposition shows that appellant bought the land from Murphy only after he had been assured by Michael that the title of Murphy was good, and it shows that Michael afterwards pointed out the lines and corners to appellant. It not being necessary to repeat the facts further, reference is made to the full statement under the first proposition. Johnson *v.* Byler, 38 Tex., 606; Gould *v.* West, 32 Tex., 352; Williams *v.* Chandler, 25 Tex., 11; Dunham *v.* Chatham, 21 Tex., 248; Love *v.* Barber, 17 Tex., 318; Van Rensselaer *v.* Kearney, 11 How., 325.

III. The court erred in excluding the deed made by Brashear, substitute trustee, to Nicholas Murphy, mentioned in bill of exceptions No. 2, because if the court had not erred in excluding the testimony of Murphy as to the object of said letter, and as to the ratification of the sale on the part of Michael McCormick, said deed was proper. This assignment of error, being a proposition itself, need not be repeated.

IV. Although parol testimony ought not to be admitted to contradict or vary a written instrument, yet it ought to be admitted to explain it, especially where there are acts and words of the party interested affirming and ratifying acts done under such instrument. Greenl. on Ev., secs. 282, 286, 295a, 297, 8, 8a, etc.

*Hamblen & Hamblen*, for appellee.

WATTS, J. COM. APP.— While courts of equity will ordinarily aid the defective execution of a power, they will never undertake to make valid the attempted execution of a power which is void for the want of authority in the person who attempts its execution. .

In this case Brashear attempted to execute the deed of trust by virtue of an instrument which does not invest him with any authority to make the sale. Hence this is not a question of the defective execution of a power, but where there is an entire want of authority in Brashear to execute the power.

When this case was before us on the former appeal, the instrument by virtue of which Brashear attempted to execute the trust deed was maturely considered, and it was then held that it did not confer upon Brashear any authority to make the sale. See McCormick v. Cheveral, Texas Law Journal, vol. 3, p. 648.

Presiding Judge Walker, then delivering the opinion, said: "We are of the opinion that the letter allows of no other construction in law than that it did not by its terms make an appointment of a substitute trustee; it did not purport to do so." °

And again it is remarked in that opinion, "The letter purports to be in response to an inquiry made through Capt. Boyce by Brashear as to what Murphy wanted to have done with the McCormick land or place; implying either some relation of agency already existing or expected to exist between himself and Murphy, relative in some way to Murphy's claim against the land; thereupon he, in effect, constitutes Brashear his (Murphy's) *attorney* to 'settle the same,' directing him as such attorney for him (Murphy), not the mutual trustee of both himself and McCormick, but his attorney, to take the proper steps to 'close it out.' The duties and powers conferred authorized Brashear to act for Murphy *as his attorney;* such attorneyship may have been that of attorney in fact or an attorney at law, and the authority given empowered him to require the trustee to sell, and thus 'close out' the business in hand. It did not profess to do more; and if more was intended, its expression was withheld from the writing. It certainly did not appoint Brashear a substitute trustee."

We have again examined the question, and finding no reason for changing our views, we adhere to the construction given to the instrument on the former appeal.

In the case of Jacobs v. McClintock, 53 Tex., 81, as in this case, the deed of trust provided for the appointment of a substitute trustee, to be made under the hand and seal of the *cestui que trust;* there the appointment was in due form, except the seal or scroll was

omitted, and this was urged as fatal; but the court said: "The mere omission of a seal would not render invalid the execution of a power otherwise valid." Here the question is not one respecting an informality in the execution of the instrument by which the substituted trustee is appointed, but it is where the omission is one of essential substance. The terms used in the instrument do not constitute Brashear a substituted trustee, and hence it is not a question respecting the defective execution of a power, as there is no power conferred upon him to execute the trust.

In this attitude of the case, the court correctly excluded the evidence of Murphy, which was offered to show, without regard to the terms of the writing, that he did intend to appoint Brashear substituted trustee. The legal effect of such an instrument can never be destroyed in that way by oral evidence. The intention and legal effect must be derived from a fair construction of the writing, without regard to any latent intent that might be lingering in the mind of the party who executed the same.

Appellee relied in the court below upon a deed duly executed by Michael McCormick to him, for this land, dated January 15, 1868, and recorded the next day. This deed expressed a consideration of $5, and contained a clause of general warranty of title. As appears from the evidence, the grantor Michael McCormick is the father of appellee. It is claimed by appellant that, from these circumstances, the deed must be considered as a gift, and hence the court erred in excluding the evidence offered by him to show that Michael McCormick did in 1872 ratify the sale made by Brashear in 1871.

To this proposition we cannot yield assent, for whatever interest Michael McCormick then had in the land passed to and vested in the appellee by apparent onerous title. Having thus conveyed the land by onerous title to appellee, the grantor could not thereafter ratify the subsequent illegal sale made by Brashear, and thereby defeat his conveyance to the appellee.

We conclude, and so report, that the judgment ought to be affirmed.

AFFIRMED.